DECISION IN MANDAMUS
{¶ 1} Relator, Birdie Hall ("relator"), commenced this original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability *Page 2 
("PTD") compensation and ordering the commission to find that she is entitled to that compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who considered the action on its merits and issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate determined that the commission's order denying PTD compensation complied with the requirements set forth in State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. The magistrate further found that the record contains some evidence to support the commission's finding and that relator has not demonstrated that the commission abused its discretion in denying her application for PTD. Thus, the magistrate recommended the court grant relator's request for a writ of mandamus.
 {¶ 3} No objections have been filed to the magistrate's decision.
 {¶ 4} Finding no error of law or other defect in the magistrate's decision we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law therein. In accordance with the magistrate's decision, the request for a writ of mandamus is denied.
Writ of mandamus denied.
 PETREE and KLATT, JJ., concur. *Page 3 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 5} Relator, Birdie Hall, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 4 
disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact: {¶ 6} 1. Relator sustained a work-related injury on June 29, 1999, and her claim has been allowed for "right shoulder sprain; cervical sprain; aggravation of cervical degenerative disc disease; depressive disorder; aggravation of pre-existing cervical disc degeneration at C6-7; pseudoarthrosis of the cervical spine."
 {¶ 7} 2. At the time of her injury, relator was 38 years old.
 {¶ 8} 3. Relator filed her first application for PTD compensation in June 2003.
 {¶ 9} 4. Relator's first application for PTD compensation was denied in an order dated March 18, 2004. The staff hearing officer ("SHO") relied upon the medical reports of Drs. James T. Lutz and Michael A. Murphy and a vocational report of Dr. Thomas O. Hoover. Dr. Lutz concluded that relator had a 29 percent whole person impairment and that she could perform at the sedentary work level. Dr. Murphy concluded that relator's allowed psychological condition would not prevent her from returning to any former position of employment or any other form of sustained remunerative employment. In his employability assessment, Dr. Hoover found that relator's age of 43 would not be a barrier to reemployment. Dr. Hoover noted that relator was illiterate and unable to read and write; however, he believed that job placement assistance and job coaching would enable her to find other work.
 {¶ 10} 5. Relator filed her second application for PTD compensation on September 28, 2006. At the time, she was 46 years old. In support of her application, relator submitted the report of Stephen Pledger, M.D., who noted that the posterior fusion *Page 5 
relator underwent in March 2006 had improved her condition but had not alleviated her pain. He opined that she was permanently and totally disabled from returning to gainful employment based on the allowed physical conditions. Relator also submitted the September 6, 2006 report of Ozzie H. McDonald, Ph.D., who opined that, after considering all the relevant factors, relator was permanently and totally disabled as a result of her recurrent depressive disorder.
 {¶ 11} 6. The commission had relator examined by Andrew Freeman, M.D. In his February 2007 report, Dr. Freeman noted his physical findings upon examination, concluded that relator had a 25 percent whole person impairment based on the allowed physical conditions and further opined that relator was capable of performing sedentary work with no overhead use of her arms and no neck turning and tilting.
 {¶ 12} 7. The commission also had relator examined by Donald L. Brown, M.D. In his February 2007 report, Dr. Brown concluded that relator had a 20 percent whole person impairment due to her allowed psychological condition which, in his opinion, was moderate. Dr. Brown concluded that there were no work restrictions due to relator's allowed psychological conditions.
 {¶ 13} 8. Relator submitted a vocational report prepared by Janet Chapman, CRC. In her April 2007 report, Chapman noted the medical evidence which she reviewed as well as the surgeries relator had undergone. Chapman also indicated that relator attempted vocational rehabilitation, but that her effort was apparently hampered by her restricted job base and her illiteracy. Ultimately, Chapman concluded that relator would not be able to return to work because she was illiterate, did not have a high school diploma, had been out of the workforce for several years, and because her vocational *Page 6 
rehabilitation efforts were unsuccessful even though she reportedly cooperated in the job search.
 {¶ 14} 9. Relator's application for PTD compensation was heard before an SHO on May 17, 2007 and was denied. The SHO relied upon the medical reports of Drs. Freeman and Brown and concluded that relator could perform at a sedentary work level with the limitation that relator could not lift her arms over her head or repetitively tilt or turn her neck. Thereafter, the SHO considered the nonmedical factors. The SHO concluded that relator's age of 46 was not a barrier to reemployment and that she had sufficient time to pursue the acquisition of new job skills through either short term or on-the-job training. With regard to relator's illiteracy, and the fact that she had taken special education classes in high school, the SHO stated:
 The Staff Hearing Officer finds that the injured worker is a high school graduate. Ordinarily, a high school education qualifies the injured worker for semi-skilled to skilled work. See O.A.C. 4121-3-34(B)(3)(b)(iv). In the case at hand, the Staff Hearing Officer finds that the injured worker was able to graduate high school by taking special education courses. Further, the Staff Hearing Officer finds that the injured worker is functionally illiterate. The Staff Hearing Officer finds that the injured worker's illiteracy would disqualify the injured worker for many occupations involving clerical duties, but the injured worker would be able to learn through on the job training or demonstration. Accordingly, the Staff Hearing Officer finds that the injured worker's educational background constitutes a moderate barrier to re-employment.
 {¶ 15} As noted, the SHO concluded that relator's illiteracy would disqualify her for many occupations involving clerical duties, but that she could learn through on-the-job training or demonstration. Further, although Chapman had noted that relator participated in vocational rehabilitation, the SHO noted that she had not. This fact was contained *Page 7 
within the statement of facts prepared by the commission and was previously relied upon by the commission as one of the reasons why her first application for PTD compensation was denied. The SHO stated:
 The Staff Hearing Officer finds that the injured worker has not participated in vocational rehabilitation services and all evidence on file indicates that she has no desire to do so. Accordingly, the Staff Hearing Officer finds that the injured worker has not made any attempt to improve her skills and enhance her ability to compete in the work force.
 Pursuant to State ex rel. Cunningham v. Industrial Commission (2001) 91 Ohio St.3d 261, the Commission may, when considering an application for permanent total disability, consider not only past employment skills, but also those which may reasonably be developed. Therefore, the Industrial Commission may consider the injured worker's lack of effort to pursue new job skills which may have enhanced her ability to gain employment.
 {¶ 16} Further, the SHO noted that relator had only been employed for approximately 15 months and that she had not worked in any capacity since 1999. As such, the SHO found that relator's prior work history was neither a positive nor negative vocational asset. Ultimately, the SHO concluded that relator was capable of performing some sustained remunerative employment.
 {¶ 17} 10. Thereafter, relator filed the instant mandamus action in this court.
 Conclusions of Law: {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by *Page 8 
entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 19} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 20} In this mandamus action, relator contends that the commission abused its discretion by denying her PTD compensation. Relator argues that the commission's order does not comply with the requirements ofNoll. Specifically, relator contends that the commission failed to explain how she can perform some sustained remunerative employment. Relator also argues that she had an additional surgery following the denial of her first application for PTD compensation and that based uponState ex rel. Soto v. *Page 9 Indus. Comm. (1994), 69 Ohio St.3d 146, and State ex rel. Hall v. Indus.Comm. (1997), 80 Ohio St.3d 289, the SHO should have granted her application because she is illiterate. For the reasons that follow, the magistrate disagrees.
 {¶ 21} First, the magistrate finds that the commission's order denying her application for PTD compensation does comply with the requirements of Noll. In Noll, the court criticized the commission's continued use of nothing more than boilerplate language indicating that the nonmedical factors did not preclude employment. That did not happen here. In this case, the commission found that relator's age of 46 was a positive factor. Further, while accepting that relator was illiterate and unable to read and write, the commission concluded that she could learn through on-the-job training or demonstration. As such, the commission found that relator's educational background was a moderate barrier to reemployment. Lastly, the commission concluded that relator's prior work history was neither positive nor negative because relator had only been employed for approximately 15 months and she had not been employed since 1999. This explanation satisfies the requirements of Noll and this argument of relator is rejected.
 {¶ 22} Relator also argues that the commission should have granted her PTD compensation because she is illiterate. Relator points to the court's decision in Soto. In that case, the claimant was 68 years old, had a sixth or seventh grade education, was literate in Spanish but not in English, had a prior work history as an assembly line worker and truck driver, had a 40 percent impairment and could not perform activities that were done much above waist or table level, that required bending, and that claimant did not have full use of his right hand. The Supreme Court of Ohio granted a writ of mandamus *Page 10 
because the commission's order did not comply with Noll and not because the claimant was illiterate in English.
 {¶ 23} Contrary to relator's assertion, the Soto case does not mandate a finding of PTD compensation here. As noted previously, relator is only 46 years old and had only worked for 15 months. While she is illiterate, that did not preclude her from obtaining employment in the first instance and the commission concluded that she could learn on the job. Relator's situation differs significantly from the situation of the claimant in Soto.
 {¶ 24} Relator also cites the Hall case as clearly showing that she is entitled to PTD compensation. In that case, the claimant was originally awarded PTD compensation for a closed period. However, after protracted administrative and judicial proceedings, the claimant's application again came before the commission. At that time, the commission denied further PTD compensation. The claimant was 53 years old, had completed the sixth grade, was functionally illiterate, had a previous work history as a laborer, timber cutter, industrial production worker, and construction worker. The commission specifically concluded that since the claimant was only 53 years old, he was young enough to make retraining and rehabilitation a probability. In granting Gay relief, the Supreme Court of Ohio stated that age is immaterial if a claimant lacks the intellectual capacity to learn. Because the claimant had only a sixth grade education, was illiterate, and had a work history consisting entirely of extremely heavy physical labor occupations which were now well beyond his physical capabilities, the court concluded that there was no explanation how or for what jobs claimant was able to retrain.
 {¶ 25} Again, relator's situation is different from the situation presented by the claimant in Hall. First, relator was only 38 years old when she was injured. At the time of *Page 11 
her second application for PTD compensation, relator was only 46 years old. Relator had finished high school, albeit in special education classes, and was functionally illiterate. Further, relator had only worked for 15 months as a machine operator. The commission found that her age was a positive factor and that her prior work history was neither positive nor negative since it had been for such a short period of time. With regards to her illiteracy, the commission explained that relator could learn on the job or by demonstration. Also, the commission specifically determined that relator was capable of learning through on-the-job training. Unlike the situation in Hall, these facts do not warrant relief pursuant to Gay.
 {¶ 26} Relator has not explained how her illiteracy, in and of itself, prevents her from working. Although relator attended special education classes, she was able to graduate from high school. Further, relator had been able to secure her first job in spite of her illiteracy. As such, the magistrate finds that the commission did not abuse its discretion by finding that her illiteracy prevented her from returning to any sustained remunerative employment.
 {¶ 27} Lastly, the commission also denied relator's application for PTD compensation based upon her lack of participation in vocational rehabilitation. The commission is permitted to consider not only past employment skills but also those skills that may reasonably have been developed. The evidence shows that relator's physician of record released her to return to work in September 2002. Relator was referred to vocational rehabilitation; however, her file was closed due to voluntary nonparticipation. This was not an abuse of discretion and constitutes another valid reason for denying her application. *Page 12 
 {¶ 28} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny her request for a writ of mandamus. *Page 1